**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| **L&F BRANDS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 1:19-CV-134-SNLJ |
| ) | |
| **CROWN VALLEY WINERY, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM AND ORDER**

Plaintiff L&F Brands, Inc. filed this lawsuit against defendant Crown Valley Winery, Inc. on August 12, 2019. Defendant moved to dismiss [#17], and plaintiff responded by filing an amended complaint [#23]. Defendant now moves to dismiss Counts V, VI, and VII of the amended complaint [#26].

**I.      Factual Background**

For the purposes of this motion to dismiss, the facts alleged in the complaint are presumed true. Plaintiff L&F markets, sells, and distributes adult beverages or alcohol products. Defendant Crown Valley is a winery, brewery, and distillery. On March 28, 2018, the parties entered into a Manufacturing Agreement under which defendant produced certain adult beverages to be marketed and sold by plaintiff. Those beverages included "chocolate and cream based wine blends and later a cream and coffee based alcohol blend." [#23 at ¶ 5.]

L&F alleges that in July 2018, Crown Valley produced 3,136 cases of "Els Iced Coffee" for L&F. At an August 2018 taste test, it was discovered that the flavor was

wrong, and Crown Valley told L&F it could safely and legally adjust the taste by adding an additional ingredient. L&F alleges this was not true; in fact, the additional ingredient caused an improper pH level in the product, leading to "product failure." L&F also states that Crown Valley concealed that information from L&F. By the time L&F discovered what had happened, however, half of the cases of the product had already been distributed to various markets. L&F learned in October 2018 that Crown Valley had used substitute ingredients in producing that product, instead of ingredients specified in the Agreement and provided by L&F.

Crown Valley produced another batch of product in September 2018. By October 2018, L&F discovered many of those cases were contaminated with bacteria, again causing product failure. L&F alleges that this failure was caused by an unsanitary production environment. L&F could not sell over 6,000 cases of the product as a result.

Also, in September 2018, Crown Valley told L&F that it had additional "Coffee Cream ingredient" that would be available for future blending, and L&F agreed to purchase 12 "totes" of that ingredient. Although L&F paid Crown Valley over $38,000, Crown Valley never ordered, received, or used the ingredient in any future L&F product.

L&F's amended complaint includes the following counts:

Count I:  breach of contract for the Manufacturing Agreement

Count II:  breach of contract for the Coffee Cream Agreement

Count III:  breach of express warranty

Count IV:  breach of implied warranty of good faith

2

   Count V:  fraud

   Count VI: unjust enrichment

   Count VII: money had and received.

Crown Valley has moved to dismiss Counts V-VII.

**II.** **Legal Standard**

  The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). In addressing a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. *United States ex rel. Ambrosecchia v. Paddock Laboratories, LLC*., 855 F.3d 949, 954 (8th Cir. 2017).  A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the prior "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 555. A complaint must set forth factual allegations which are enough to "raise a right to relief above the speculative level." *Id.* at 555. However, where a court can infer from those factual allegations no more than a "mere possibility of misconduct," the complaint must

be dismissed. *Cole v. Homier Distributing Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

**III.   Discussion**

Each of the subject counts is discussed below.

    **A.**   **Count V:  Fraud**

Defendant moves to dismiss Count V for fraud because it is barred by the economic loss doctrine. "The economic loss doctrine prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature." *Trademark Medical, LLC v. Birchwood Laboratories, Inc.*, 22 F.Supp.3d 998, 1002 (E.D. Mo.2014). Here, plaintiff alleges economic or commercial losses related to the following alleged misrepresentations:

- That defendant had failed to disclose the misblending or use of incorrect ingredients [#23 at ¶ 76].

- That defendant falsely represented to plaintiff that it could safely, legally, and properly add an additional ingredient to adjust the flavor without causing or increasing risk of an improper pH level [*id.* ¶ 77].

- That defendant falsely represented that it was producing products in a clean, sanitary, and sterile environment [*id.* ¶ 79].

- That defendant falsely represented that it could purchase an additional ingredient (the "coffee cream") for future use, but, despite being paid to

4

>order it, defendant never ordered, received, or used the ingredient [*id.* at ¶ 81].

Defendant contends that these allegations are all related to the contract and thus may only be actionable under contract theories, not in tort.

"A fraud claim independent of the contract is actionable, but it must be based upon a misrepresentation that was outside of or collateral to the contract, such as many claims of fraudulent inducement. That distinction has been drawn by courts applying traditional contract and tort remedy principles." *AKA Distrib. Co. v. Whirlpool Corp*., 137 F.3d 1083, 1086 (8th Cir.1998).  This Court has identified two "critical factors in examining whether a fraud claim is independent of a contract claim under the economic loss doctrine," including

>(1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract (see *AKA Distrib.*, 137 F.3d at 1087 (alleged misrepresentations concerned "a term of the contract" and were therefore not actionable)) and (2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud (*see Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, Inc., 98 F.3d 13, 20 (2d Cir.1996) (citing cases) (to be actionable a fraud claim must "seek special damages that are caused by the misrepresentation and unrecoverable as contract damages")).

*Compass Bank v. Eager Rd. Associates, LLC*, 922 F. Supp. 2d 818, 827 (E.D. Mo. 2013).

None of plaintiff's fraud allegations survive this analysis.  The allegation that defendant failed to disclose its improper blending, that it could fix the problem it created, and that it was producing the products in a sanitary environment all seem to be just another way of saying that defendant breached the contract—the damages are the same.

5

Although plaintiff contends that it suffered additional damages from the alleged fraud by the delay and by way of damage to its reputation, "the economic loss doctrine encompasses consequential economic loss such as loss of profits and loss of good will or business reputation." *Trademark Med., LLC v. Birchwood Laboratories, Inc.*, 22 F. Supp. 3d 998, 1004 (E.D. Mo. 2014).  Plaintiff argues that defendant's representation that it could legally fix the mistake is sufficiently outside the contract, but defendant's attempt to remedy its failures under the contract still pertain to the contract.  They do not constitute an independent fraud claim.

As for the representation that defendant could purchase the coffee cream, defendant's duty to procure the coffee cream was incorporated into the contract.  It cannot form the basis of a fraud claim because "the pre-contract misrepresentations became part of the final contract, and the plaintiff alleged no damages outside of what was due under the contract itself." *OS33 v. CenturyLink Communications, L.L.C.*, 350 F. Supp. 3d 807, 816 (E.D. Mo. 2018).  Plaintiff's damages from the alleged "fraud" are exactly its damages as a result of the breach of contract.

The economic loss doctrine therefor bars plaintiff's fraud claims.  Count V will be dismissed.

    **B.**    **Counts VI and VII: Unjust Enrichment and Money Had and Received**

To state a claim for unjust enrichment, plaintiff must allege "(1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit."

6

*Dubinsky v. Mermart LLC*, 4:08-CV-1806 (CEJ), 2009 WL 1011503, at *5 (E.D. Mo. Apr. 15, 2009), *aff'd*, 595 F.3d 812 (8th Cir. 2010) (quoting *Executive Bd. of Missouri Baptist Convention v. Windermere Baptist Conf. Ctr.*, 280 S .W.3d 678, 697 (Mo. App. 2009)).  Similarly, a claim for money had and received requires that "(1) the defendant received or obtained possession of the plaintiff's money; (2) the defendant thereby appreciated a benefit; and (3) the defendant's acceptance and retention of the money was unjust."  *Gerke v. City of Kansas City*, 493 S.W.3d 433, 438 (Mo. App. W.D. 2016).

"It is a well-settled principle of law that implied contract claims [such as unjust enrichment] arise only where there is no express contract." *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. App. W.D. 2014). "Accordingly, a plaintiff cannot recover under an equitable theory when she has entered into an express contract for the very subject matter for which she seeks to recover." *Id.*; *see also Grisham v. Mission Bank*, 531 S.W.3d 522, 538–39 (Mo.App. W.D. 2017) (quoting *id.*).  Defendant thus contends that these two equitable claims are unavailable to plaintiff and must be dismissed.

Plaintiff responds that Counts VI and VII are alternatives to L&F's breach of contract claims.  Indeed, "a party may plead claims both for breach of contract, and on equitable theories which are only available in the absence of a contract."  *Steelhead Townhomes, L.L.C. v. Clearwater 2008 Note Program, LLC*, 537 S.W.3d 855, 863 (Mo.App. W.D. 2017).  However, plaintiff does not plead these counts in the alternative. Plaintiff relies on *Owen v. General Motors Corp.*, in which the court denied a motion to dismiss equitable claims because "[t]he fact that a plaintiff cannot simultaneously recover

7

damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in her complaint." 06-4067 CV CNKL, 2006 WL 2808632, at *2 (W.D. Mo. Sept. 28, 2006).  That court, however, noted that it must accept that "allegations necessary to the unjust enrichment count are also true, namely that there was no valid contract." *Id.*  Plaintiff's pleading here makes no such allegation; rather, the equitable counts adopt all previous allegations, including the existence of a valid contract.  As a result, this Court will dismiss Counts VI and VII because they are improperly pleaded.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [#17] is DENIED as moot.

**IT IS FURTHER ORDERED** that defendant's partial motion to dismiss [#26] is GRANTED, and Counts V, VI, and VII are dismissed.

Dated this   24th   day of June, 2020.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE